Cynthia NOLAND, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.

No. WD 45939.

Missouri Court of Appeals, Western District.

April 20, 1993.

Rehearing Denied June 1, 1993.

Janice P. Noland, Camdenton, for appellant.

James L. Sanders, Kansas City, for respondent.

Before KENNEDY, P.J., and BERREY and SPINDEN, JJ.

KENNEDY, Presiding Judge.

This is a conversion case, in which the alleged conversion consisted of defendant's unauthorized removal of plaintiff's wrecked and disabled car from the auto body shop where she had placed it, to an auto salvage company lot some distance away. Trial to a jury resulted in a jury verdict for defendant, and plaintiff has appealed from the ensuing judgment.

Plaintiff on the afternoon of October 22, 1986, was driving her 1984 Pontiac Sunbird automobile south on Wornall Road in Kansas City. At the intersection of Wornall Road and 75th streets, a car going west ran a red light and struck plaintiff's car on the driver's side. Plaintiff was injured, and her car disabled. Before she left the scene to go to the hospital, a person from Durham Brothers Auto Body asked her if she would like him to tow the car to Durham Brothers Auto Body. Durham Brothers Auto Body was at 74th and Prospect, not far away from the place of the car wreck. Plaintiff authorized the person to tow her car to Durham Brothers.

Plaintiff's father, who lived at Camdenton, engaged a flatbed truck and driver to accompany him from Camdenton to Kansas City to get the car and return it to Camdenton. When they went to Durham Brothers at about 9:00 o'clock a.m. on October 31, plaintiff's car was gone. Plaintiff's father made two telephone calls to State Farm, with no satisfaction. His third call was to a Camdenton State Farm agent, who evidently assisted in some way to locate the car at Kansas City Salvage Pool and secure its release to plaintiff's father. At about 2:00 o'clock p.m., plaintiff's father arrived

at Kansas City Salvage Pool. The car was released to him. It was loaded on the truck, and was transported back to Camdenton.

The four or five hour delay and the additional travel for the truck and driver cost plaintiff an additional $150.

After the trial, the trial judge, upon defendant's motion under Rule 55.03, assessed against plaintiff $5,000 attorney's fees and $1,844.11 costs, from which order plaintiff has appealed.

Taking up first the appeal from the judgment in the conversion action:

■ Plaintiff says the trial court erred in submitting to the jury the liability issue in the conversion action—that she was entitled to a directed verdict on the issue of liability. She argues that the defendant in its opening statement to the jury admitted the facts establishing its liability for the conversion. If this is the case, the court may direct a verdict for the plaintiff. *Consolidated Pub. Water Supply Dist. No. C–1 v. Farmers Bank*, 686 S.W.2d 844, 849 (Mo.App.1985).

■ Plaintiff filed no post-trial motion for judgment notwithstanding the verdict. Rule 72.01(b) provides that, when a motion for a directed verdict made at the close of all the evidence is denied, "the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." The rule then provides for a post-trial motion for judgment in accordance with the motion for directed verdict, notwithstanding the verdict. A motion for judgment n.o.v. or motion for new trial is necessary for the preservation of error in the court's denial of the motion for a directed verdict. *See Frisella v. Reserve Life Ins. Co.*, 583 S.W.2d 728 (Mo.App.1979). By failing to file a motion for judgment n.o.v., plaintiff has failed to preserve the alleged error of the court in denying the motion for directed verdict.

■ Plaintiff in her reply brief, however, says the court's denial of her motion for a directed verdict was plain error. This is an appeal to Rule 84.13(c), which provides:

Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

■ The request that we review as for plain error is addressed to the court's discretion. In this case, we do not deem "manifest injustice" or "miscarriage of justice" to have resulted. Assuming plaintiff was entitled to a directed verdict on liability in the conversion case, the actual damage, according to plaintiff's own evidence, was relatively small.[1] Plaintiff makes no attempt to excuse the failure to file a motion for judgment n.o.v. We decline to waive our requirements for preservation of error in order to review the submissibility of plaintiff's conversion case.

Plaintiff makes several other allegations of trial court error, but plaintiff did not file a motion for a new trial, as provided in Rule 78.07. The rule says that "allegations of error to be preserved for appellate review must be included in a motion for a new trial ..." except certain questions not relevant here. The allegations of error attempted to be raised here on appeal have therefore not been preserved for review. *Browning v. Salem Mem. Dist. Hosp.*, 808 S.W.2d 943 (Mo.App.1991). We decline to review them as plain error under Rule 84.-13(c).

## RULE 55.03 SANCTIONS

The trial court after the trial imposed Rule 55.03 and section 514.205, RSMo Supp.1992, sanctions against plaintiff. No sanctions were imposed against plaintiff's attorney, who was plaintiff's mother. The order required plaintiff to pay $5,000 attorney's fees and $1,844.11 for costs. The court's order imposing sanctions was based upon a finding that "plaintiff is in violation

---

1. Proof of actual damage is not a necessary element of a conversion claim. *Jackson v. Engert,* 453 S.W.2d 615 (Mo.App.1970). We consider the absence of substantial actual damages only on the threshold question whether to review for plain error.

of Supreme Court Rule 55.03 and Section 514.205 RSMo." The order contained findings of a number of plaintiff's offenses against local court rules and against good practice.

Included among the Court's findings in the Rule 55.03 order were findings that plaintiff had made a frivolous claim against State Farm for damages and attorney's fees for defendant State Farm's alleged vexatious refusal to pay plaintiff's damages caused by State Farm's insured in the automobile collision, and that she had made a frivolous claim for punitive damages for the conversion. To explain: Plaintiff's petition was in two counts. Count I was against Gary Trubore, State Farm's insured, for damages for personal injuries and property damage sustained by plaintiff in the October 22 collision. (This count was dismissed without prejudice before trial.) Count II was against State Farm for its alleged conversion of plaintiff's automobile. In the conversion count against State Farm, plaintiff threw in the following paragraph: "That Defendant State Farm has failed and refuses to pay for Plaintiff's losses for personal injury and property damage as more fully alleged in Count I, such failure and refusal is in violation of Section 375.296 and 375.420, RSMo." Plaintiff then requested damages for vexatious delay and for attorney's fees.

Plaintiff also alleged in her petition for conversion that State Farm's conduct "was outrageous in that it was done with an evil motive to benefit defendant State Farm and in reckless indifference of the plaintiff's rights." Included in the prayer of the petition was a prayer for punitive damages.

Did the trial court properly impose sanctions against the plaintiff?

## CLAIM FOR VEXATIOUS REFUSAL TO PAY

■ The claim for damages for vexatious refusal to pay and for attorney's fees under sections 375.296 and 375.420, RSMo 1986, was indeed frivolous. Neither of the two cited sections applies to a negligence claim against an insurance company's liability insured, but only to claims upon the contract, or policy, of insurance. Under Rule 55.03, an attorney in signing a pleading, motion, or other paper, certifies that he believes, upon reasonable inquiry, that it is warranted by existing law. *See Saint Amant v. Bernard*, 859 F.2d 379, 382 (5th Cir.1988); *Ingram v. Horne*, 785 S.W.2d 735 (Mo.App.1990). Plaintiff was in violation of Rule 55.03 in making the claim for vexatious refusal to pay.

■ The claim for vexatious refusal to pay, however, would not by itself justify the assessment against plaintiff of attorney's fees of $5,000 and costs of $1,844.11. Plaintiff dismissed this portion of her claim the morning of the trial. State Farm could have spent only a minimal amount in defending the claim. It required no collection of evidence, no discovery, and only a minimal amount of legal research. The claim did not cause the defendant a trip to the courthouse, or a telephone call. The sanction of attorney's fees and costs are to compensate the opposing party the cost of defending against the baseless motion or pleading. *Dillard Dep't Stores, Inc. v. Muegler*, 775 S.W.2d 179, 186 (Mo.App. 1989). A sanction of $100 attorney's fees against the plaintiff would be sufficient.

## CLAIM FOR PUNITIVE DAMAGES

■ As for the claim for punitive damages, we are unable to find in the record any support for the court's imposition of Rule 55.03 sanctions against plaintiff. It should first be noticed that Rule 55.03 speaks as of the time the pleading is signed. *Ingram v. Horne*, 785 S.W.2d 735, 740 (Mo.App.1990). At the time of filing the initial pleading, plaintiff knew that State Farm, without any notification to her, and without her permission or under any color of right, had removed her car, from the place she had sent it, to some unknown place. When her father, after four or five hours' delay, had located the car at the Kansas City Salvage Pool, where State Farm had sent it, he found Kansas City Salvage had commenced to dismantle it; it had removed the stereo and the spare tire.

It replaced these parts as plaintiff's father waited.

At the time of signing the petition, plaintiff did not know, and could not know, defendant's motives in removing her car. She would be required to prove that defendant had acted, not only wrongly and intentionally, but with "a culpable mental state on the part of defendant, either by a wanton, willful or outrageous act or reckless disregard (from which an evil motive is inferred) for an act's consequences." *Burnett v. Griffith*, 769 S.W.2d 780, 787 (Mo. banc 1989). We do not think plaintiff, in order to escape Rule 55.03 sanctions, must have had in hand, at the time her petition was signed (containing, as it did, the allegations and prayer for punitive damages), direct evidence of defendant's culpable state of mind. We are not willing to say, since the question is not presented to us on this appeal, that the jury could not have inferred an evil motive from the facts recited above.[2] If, however, such evidence would not make a *prima facie* case for punitive damages, it would at least provide "probable cause" for the punitive damages claim. Discovery would furnish the most promising source of other evidence of State Farm's evil motive.

In including in her petition a characterization of State Farm's conduct as outrageous, and in requesting punitive damages, we hold the plaintiff did not act frivolously or unreasonably so as to incur Rule 55.03 sanctions. It is not to be overlooked that the punitive damages claim was based upon the same conduct as the underlying conversion claim. It adds to the underlying conversion claim only a characterization of defendant's act.

Rule 55.03 is not to be applied in such a way as to make parties and attorneys overcautious in pleading. "The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed.R.Civ.P. 11 advisory committee notes.

Defendant's motion for Rule 55.03 sanctions, upon which the court's order purported to rule, complains only of plaintiff's allegation of defendant's vexatious refusal to pay and her prayer for statutory damages and attorney's fees, and of her punitive damages allegations and prayer. These were the only Rule 55.03 infractions of which plaintiff had notice and opportunity to defend. The court's order imposing sanctions purports to rule upon defendant's motion. The court's sanctions order, however, while purporting to rule on defendant's Rule 55.03 motion, recites a number of plaintiff's unsuccessful motions, her failures to comply with local court rules, and the like. We treat these recitals as surplusage; in themselves, they provide no basis for imposing sanctions. The court may sua sponte initiate a procedure to impose sanctions, but notice and hearing are essential. The correct procedure for initiating Rule 55.03 sanctions may be found in *Ingram v. Horne*, 785 S.W.2d at 739–40. The correct procedure contemplates "basic due process principles of notice and opportunity to be heard." *D.S.P. v. R.E.P.*, 800 S.W.2d 766, 771 (Mo.App.1990).

Respondent's brief affords no help at all in defending the trial court's order. It refers this court to its trial court Motion for Sanctions, Supporting Suggestions and Supplemental Suggestions, "incorporating same by reference herein." It does not attempt to particularize any single paper filed by plaintiff which would call for Rule 55.03 sanctions, nor explain why. It sweeps all plaintiff's supposed infractions into a single heap and dumps them in the court's lap to sort out. *Ingram v. Horne* warns against such an approach.

Judgment for defendant in conversion action affirmed. Judgment against plaintiff for Rule 55.03 sanctions reversed. Cause remanded with instructions to assess against plaintiff attorney's fees of $100 for

---

**2.** One of plaintiff's points on appeal is that the court erred in not submitting the punitive damages issue to the jury. We have held, supra, that this point was not preserved for review.

groundless allegation of vexatious refusal to pay. Costs of this appeal assessed against parties equally.

All concur.